THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH WRIGHT, Defendant-Appellant.

(No. 73-296;

Third District—December 4, 1974.

James Geis and Stephen Hurley, both of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (Patrick McNamara, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Joseph Wright, was convicted of murder and was sentenced by the Circuit Court of Will County to a term of 14 to 20 years in the penitentiary. He appeals contending that certain instructions were erroneous.

Shortly before the occurrence, Felipe Gutierrez was driving north on Chicago Avenue in Joliet. As he approached the intersection of Chicago and Osgood Avenues, he began to make a right turn onto Osgood. He was unable to complete the turn, however, because another car had stopped on Osgood near the intersection and was blocking the street in front of him. Inside of his vehicle were his mother, wife, sister and three small daughters. He was taking his mother and sister home and was then going to a show with the rest of the family.

Joseph Wright was standing outside the passenger side of the stopped automobile by the curb, apparently talking to the driver. Mr. Gutierrez honked his horn a number of times and, shortly thereafter, the vehicle

ahead of him began to move. As it pulled away he too began to move forward, while Joseph Wright, who had been at the curb, began to walk across the street between the two vehicles.

The testimony of the witnesses, with regard to what occurred next, differed from one another.

Mrs. Jonnie Cuffie was driving a car which was parallel to that of Gutierrez, but facing in the opposite direction. She said that Gutierrez put on the brakes to keep from hitting Wright and that after he did so the defendant put his hand on the hood of the car, walked around to the driver's side and kicked the car door with his left foot. At that, she stated, Gutierrez jumped out of his car and, while gesturing with his hands, said, "Man you can't block these streets people have to drive through here." Next, she said the defendant pulled a gun and stepped closer to Gutierrez while muttering a few obscenities. Gutierrez then picked up his left leg and right hand to hit the gun. Wright took two steps backward and Gutierrez took two steps toward him and with the gun pointed toward Gutierrez, Wright shot. She said she heard three or four shots but only saw two fired—the second bullet going through the window of her car. Mrs. Cuffie saw no physical contact between Gutierrez and Wright and did not see Gutierrez spit at the defendant. When the gun was fired the first time by defendant it was pointed at Gutierrez's chest and Gutierrez's hands were both at shoulder height with nothing in them and he was not attempting to hit Wright. Further, that he did not reach toward his pocket.

Otis Common, Mrs. Cuffie's 15-year-old son, was sitting in the back seat of Mrs. Cuffie's car. He stated that after Gutierrez braked to avoid hitting Joseph Wright, Wright looked in the windshield said something, walked to the driver's side, and kicked the door making a dent which popped out as Gutierrez got out of the car. The defendant backed up as Gutierrez, raising his hands, hollered at him. The witness said Wright took two steps back, pulled out a gun and shot Gutierrez in the chest. He stated that Mr. Gutierrez neither put his hands near his pocket, nor spit at, nor punched or kicked the defendant. There was nothing in his hands. The barrel of the gun was never pointed up in the air.

Artena Hernandez, also a passenger in the Cuffie car, said that she did not see the defendant touch or kick the Gutierrez vehicle. Rather, she said, Gutierrez slammed the door to his car and advanced rapidly toward the defendant. She was unsure as to whether the defendant took out the gun as Gutierrez was getting out of the car or as Gutierrez was advancing toward him. She said that she did not see the deceased spit at the defendant nor strike any blow at defendant.

Paul Van Duyne, a lathe operator at Caterpillar, was headed south

on Chicago and was stopped at the corner of Chicago and Osgood when the occurrence took place. He said his view was unimpaired and that he watched Gutierrez jump out of his car and walk to the rear of it, going after the defendant. Gutierrez, he testified, swung and kicked at the defendant, but failed to make contact. The defendant had his hands up in front of his chest to defend himself, and then reached into his coat and took out a gun. He fired two rapid shots while the gun was pointed at Gutierrez.

Fred Padovich, a steelworker, was a passenger in the Van Duyne car. He wore glasses but did not have them on at the time. He said that he watched Gutierrez get out of the car and move to the rear of it where the defendant was. They appeared to be talking or arguing and it looked as though Gutierrez was going to punch or kick Wright, but he never saw him throw the punch. He said that the defendant then stepped back, took out a gun and shot twice. He did not see the deceased spit at the defendant.

Ampal and Carolyn Gutierrez, the deceased's sister and wife, respectively, testified that the defendant, after walking in front of the car, walked around to the driver's side and kicked it. The deceased, who weighed 120 pounds and was 5 feet 8 inches tall, got out of the car and his sister heard him ask the defendant why he was blocking the road and kicking the car. Both men walked to the rear of the car whereupon, the women said, the defendant pulled a gun and shot him. Ampal Gutierrez heard three or four shots whereas Carolyn heard two. Neither saw blows exchanged nor saw the deceased spit or reach for his pockets.

Joseph Wright testified that after the driver to whom he had been talking pulled away he began to walk across the street toward his car. He heard a loud noise, the Gutierrez car engine, and, being startled, he jumped and threw up his hands. He said that as he continued across the street he heard Mr. Gutierrez say something. Gutierrez then jumped out of his car and asked the defendant what he had said. The defendant responded, "Oh man hold your breath." Gutierrez then stepped toward him and pushed him. Mr. Wright said, "What is this," and Gutierrez again asked what Wright had said. The defendant replied "I said say man hold your breath."

Next, he said, Mr. Gutierrez spit on his coat and he, in response, called him a name. Gutierrez then tried to kick him, but was pushed by the defendant as he did so, and therefore only touched the defendant's groin with his foot. That done, Mr. Wright said, Gutierrez began to fumble at his right coat pocket. Thinking he might be reaching for a gun, the defendant said he pulled out his own gun. He asked Gutierrez if he was going to leave him alone, but Gutierrez went to push him, so

the defendant raised his gun upwards and fired. He said that he was not aiming it at Gutierrez. After the shot, Gutierrez backed off and then came back swinging wildly. The defendant stated that he tried to block him and then fired again, though he did not intend to shoot him.

Danny Knight was the driver of the vehicle which had been blocking the street. He pulled his car over to the side of the road and observed Joe Wright walk around the Gutierrez vehicle. He said that Wright was headed north when Gutierrez got out of the car and started chasing him, trying to hit him and kick at him. He said that Wright kept telling Gutierrez to back off and that Gutierrez reached into his pocket at which time he heard a gun go off twice. It was Joe Wright who had the gun.

All witnesses agree that after the shooting Gutierrez walked back to his car and began to drive off. A moment later, though, he slumped over and the automobile ran up onto the curb. Joseph Wright began to walk away from the area but then broke into a run.

Scientific examinations were made of the defendant's coat and shoes. Saliva was found on the front of the Joseph Wright coat, though the saliva could not be positively linked to Gutierrez because of the effect which chemicals in the clothing fibers had had on it. The defendant's shoes and pants were tested and compared against a soil and paint standard taken from the deceased's vehicle. No comparable soil or paint was detected on Mr. Wright's shoes and pants.

Medical testimony established that Gutierrez died as a result of a bullet wound. The path of the bullet was from front to back, slightly to the right and slightly downwards.

Also introduced into evidence were two tape-recorded statements made by the defendant after his arrest. In the first statement, the defendant denied any knowledge of the occurrence. In the second statement, however, he related his involvement in the shooting, describing the events in much the same manner that he did in his testimony.

■■■ Defendant on appeal complains of certain instructions that were given without objection in the trial court. Defects in instructions are waived unless objection is made in the trial (*People v. Kelley,* 105 Ill.App.2d 481, 485). However, Supreme Court Rule 451(c) provides that in criminal cases substantial defects in instructions are not waived by failure to make timely objections thereof if the interests of justice require it. (14A I.L.P. *Criminal Law* § 652 (1968).) One who seeks to avoid waiver of defects in instructions for failure to make specific objection has burden of establishing (a) that the defects in the instruction are substantial, and (b) that the giving of the instruction resulted in denying to the defendant a fair trial and justice. *People v. Price,* 96 Ill.App.2d 86, 95.

At the conference on instructions it was agreed that the evidence was such as to warrant an instruction on self-defense; on murder; and on voluntary manslaughter.

When the issue involved in self-defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all other elements of the offense. Ill. Rev. Stat. 1971, ch. 38, par. 3—2; *People v. Adams*, 113 Ill.App.2d 205.

In the instant case the jury was instructed that the State must prove beyond a reasonable doubt that the defendant was not justified in using the force which he used. IPI—Criminal, No. 25.05 (issues in defense of justifiable use of force) was given without objection. But they were also instructed in a separate instruction, IPI—Criminal No. 7.02 (issues in murder) that they could find the defendant guilty of murder with no requirement that the State prove beyond a reasonable doubt that the defendant was not justified in using the force which he used.

■■ The elements or issues of the defense of self-defense should be treated in two ways: first, by definition following the definition of the crime with which defendant is charged (this was done in the instant case) and second, in the same instruction with the issues or elements of the crime and the State's burden of proof. The jury should receive a *single* instruction covering all of the issues. (IPI—Criminal, at 436; IPI—No. 25.05.) An example is given at IPI—Criminal, at 460. Also see *People v. Joyner*, 50 Ill.2d 302, 307.

■■ When the language of an instruction is inaccurate, and, standing alone, might have misled the jury, others in the series may explain it, remove the error or render it harmless. But that can never be so when instructions are in direct conflict with each other, one stating the law correctly and the other incorrectly. (*People v. Miller*, 403 Ill. 561, 565.) IPI—Criminal No. 7.02 should not have been given. Under the circumstances of this case we believe the defendant's failure to object to IPI—Criminal No. 7.02 was not as important with reference to the fundamental fairness of the trial as the requirement that the jury be properly instructed.

Defendant also contends that the jury was given a manslaughter instruction which described the wrong theory and which was inapplicable to the facts of the case and that the one given on the issues did not make sense. He is asserting that when murder is the charge and self-defense is claimed that IPI—Criminal No. 7.05 must be given.

Section 9—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—2) defines two different types of voluntary manslaughter. The first type, described in subsection (a) occurs when at the time of the killing

the accused was acting under a sudden and intense passion. Instructions 7.03 and 7.04 of IPI correspond to this theory of voluntary manslaughter.

The second type is described in subsection (b) of section 9—2 thusly:

"(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

IPI—Criminal No. 7.05 (intentional-belief of justification) and 7.06 (issues) correspond to this theory. The difference between a justified killing under self-defense and one not justified, amounting to voluntary manslaughter, is that in the former instance the belief that the use of force is necessary is reasonable under the circumstances, and in the latter, the belief is unreasonable. *People v. Joyner*, 50 Ill.2d 302, 307.

In giving the instruction on justifiable use of force the trial court here determined, as a matter of law, that there was sufficient evidence on that issue for the consideration of the jury. When the trial court determined that the facts in evidence justify or require the giving of an instruction on the justifiable use of force, there are, in fact, three alternatives for the consideration of the jury, *i.e.*, (1) murder, (2) that the use of force was justified and self-defense was demonstrated, or (3) that while the defendant might have believed that the use of force was necessary under the evidence, such belief was unreasonable. (*People v. Johnson*, 1 Ill.App.3d 433, 435; *People v. Zertuche*, 5 Ill.App.3d 303; *People v. Dortch*, 20 Ill.App.3d 911, 314 N.E.2d 324. But, also see *People v. Humble*, 18 Ill.App.3d 446.) In the instant case the jury was never given the opportunity to consider the statutory offense which results when force is used unreasonably as defined in section 9—2(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(b)).

The instruction given in the instant case was a modification of IPI—Criminal No. 7.04, the pertinent part of which, as modified, read as follows:

"That where the defendant did so he acted under a sudden and intense passion resulting from serious provocation by Felipe Gutierrez, whom he endeavored to kill, but he negligently or accidentally killed Felipe Gutierrez."

It is unlikely that one could endeavor to kill A and at the same time negligently or accidentally kill A. The committee note to No. 7.04 suggests that "[b]lanks should be filled in with names of decedent and third person as applicable." It is a type of situation when a defendant, acting under a sudden and intense passion resulting from serious provocation

by A, whom he endeavors to kill, but negligently or accidentally kills B, that this section of the instruction is applicable.

■■ We believe that under the circumstances of this case the defendant's failure to either object or to tender appropriate instructions was not as important to the fundamental fairness of his trial as the requirement that the jury be fully and properly instructed.

For reasons stated the judgment of conviction is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ALLOY and STOUDER, JJ., concur.