THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IRA LEWIS, Defendant-Appellant.

First District (1st Division)   No. 76-1230

Opinion filed September 26, 1977.

James Geis and Victoria Meyers, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Paul E. Kelly, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Ira Lewis, was charged by indictment with four counts of aggravated battery and one count of unlawful use of weapons. The unlawful use of weapons count charged that defendant knowingly possessed a shotgun with a barrel of less than 18 inches in length in violation of section 24—1(a)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(7)). The aggravated battery counts charged the defendant with intentionally inflicting great bodily harm upon Joseph Lewis, Sr., and Joseph Lewis, Jr., and also with committing a battery upon these two individuals while using a deadly weapon in violation of section 12—4(a), 12—4(b), and 24—1 (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(a), 12—4(b)(1), and 24—1). After a jury trial, defendant was found guilty on all five counts. The trial court entered judgment on the verdict and sentenced defendant to concurrent terms of 2 to 6 years for aggravated battery and 1 to 3 years for unlawful use of weapons.

Defendant now appeals and raises the following issues for review: (1) whether the instructions to the jury setting forth the elements of aggravated battery and battery erroneously failed to include the requirement that the State prove beyond a reasonable doubt that defendant was not justified in using the force that he did; (2) whether the trial court erred in denying defense counsel's request to consult with the defendant during the course of cross-examination; and (3) whether the trial court erred in refusing to permit defense counsel to elicit testimony of a State's witness that one of the complainants was the father of her child.

We affirm in part, reverse in part, and remand.

The first witness called by the State to testify at trial was the first complaining witness, Joseph Lewis, Sr. (hereinafter sometimes referred to as Joseph, Sr.). Joseph, Sr., testified that about 6 p.m. on January 24, 1975, he arrived at his second floor apartment at 1545 South Tripp Street in Chicago. Herman Pitman, Betty Love, his son, Joseph Lewis, Jr., daughter, Josephine Lewis, and the defendant were present when he arrived. Joseph, Sr., went to his bedroom where Herman Pitman twice entered and spoke to him about going out with Josephine. After these conversations with Pitman, the defendant Ira Lewis entered Joseph, Sr.'s, bedroom and hit him on the head with an axe handle. Joseph Lewis, Sr., then went into the dining room where Ira Lewis again hit him on the head. At this point Joseph, Sr., fell to the floor and could remember nothing further concerning the incident.

Also called by the State was Joseph Lewis, Jr. (hereinafter sometimes referred to as Joseph, Jr.), the other complaining witness. Joseph, Jr., testified that the argument began when his sister Josephine refused to go out with Herman Pitman. The argument also involved Joseph Lewis, Sr.'s, refusal to lend Mr. Pitman money. Mr. Pitman twice entered Joseph, Sr.'s,

bedroom to speak with him and when he exited the second time he told Joseph, Sr., that he "would kick his ass." Joseph, Jr., responded that no one was going to do that to his father. Ira Lewis then went into his bedroom with Josephine, came out with a wooden bat, and went into Joseph, Sr.'s, bedroom. Ira Lewis exited Joseph, Sr.'s, bedroom followed by Joseph, Sr., and struck Joseph, Sr., with the bat when they both were in the living room. Joseph, Jr., then ran toward the defendant and was himself struck by Ira Lewis with the bat. After striking Joseph, Jr., with the bat, Ira Lewis pointed a gun at him and told him to leave.

The third State's witness, Josephine Lewis, corroborated her brother's testimony regarding the inception of the altercation, including Herman Pitman's request to date her, his threat to "kick his [Joseph, Sr.'s] ass," the argument regarding Joseph, Sr.'s, refusal to lend Pitman money, and Ira Lewis' pulling a gun on Joseph, Jr. She further testified that after the weapon failed to fire she accompanied Ira into his bedroom, where he offered to stop bothering her brother and father if she would go to bed with him. She kissed him, and Ira told her he would stop bothering them. Josephine then left the apartment and called the police. After calling the police, Josephine returned to the apartment where she saw Ira Lewis with a shotgun in his hand.

Betty Love, Joseph, Jr.'s, girl friend at the time of the incident, testified that she saw Ira Lewis enter his bedroom and exit with a gun which he pointed at Joseph, Jr.'s, face. Ira pulled the trigger, but the gun did not fire. After Ira went into his bedroom accompanied by Josephine, Betty Love left to call the police.

The State also presented the testimony of three police officers who were called to the scene, officers McNair, King and Cross. Officer McNair testified that he went to the back of the building where he met Josephine Lewis. They entered the apartment where Officer McNair took a statement from Josephine Lewis and arrested Herman Pitman.

Officers King and Cross entered the building through the front and observed Ira Lewis above them, on the stairs, with a stick in his left hand and a sawed-off shotgun in his right hand. They placed Ira Lewis under arrest, searched him and recovered two shells from his pocket and three from the weapon.

The principal witnesses on Ira Lewis' behalf were the defendant himself, Herman Pitman and Nathaniel Best, called "Pops." They presented the following account of the incident. "Pops", over 70 years of age, testified that he arrived at the apartment about 6 or 7 p.m. and asked Joseph, Sr., for a girl. Told it would cost $10, "Pops" agreed. Joseph, Sr., then went back into his bedroom with Josephine and closed the door. Although "Pops" testified that the money was a gift, "Pops" asked for the money back. When Joseph, Sr., refused to return the money, an argument

began between Joseph, Sr., and Herman Pitman. Ira Lewis came out of his room and "Pops" explained to him what had happened. "Pops" testified that he then left and saw no fight.

Ira Lewis testified that after he spoke to "Pops" he asked Joseph, Sr., to return to "Pops" the $10. After Joseph, Sr., refused to return the money, Joseph, Jr., who had been sitting on the couch, hit Ira Lewis on the side of the head. Ira stepped back and grabbed a piece of wood that was next to the stove. Joseph, Sr., then pulled out a red-handled pocket knife and ran toward Ira, who swung the stick at Joseph, Sr., and knocked him down. When Joseph, Jr., picked up a wine bottle, Ira hit him with the stick and ran out the back door. Joseph, Jr., ran out the door as well, and a few minutes later the police arrived. The above testimony of Ira Lewis was corroborated in pertinent part by Herman Pitman. Defendant concluded his testimony stating that he was arrested on the stairs of the apartment, and that at that time he had no shotgun or shells in his possession.

■■ Defendant first contends that the instructions read to the jury setting forth the elements of battery and aggravated battery erroneously failed to include the requirement that the State prove beyond a reasonable doubt that the defendant was not justified in using the force that he did. In response to this contention the State first argues that the defendant did not object to the instructions read to the jury and thereby waived the right to assert this omission as error on appeal. The prosecution also acknowledges Supreme Court Rule 451(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(c)), which provides in pertinent part, that "* * * substantial defects [in jury instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." (See also Supreme Court Rule 615(a) Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) The prosecution, however, contends that the interests of justice do not require this court to consider the above contention of error because defendant was not prejudiced thereby. The State points out that jury instructions should be considered as a whole and that if, when considered as a whole, they fully and fairly define the applicable law the instructions are sufficient and do not cause prejudice to the defendant. (See *People v. Kelly* (1956), 8 Ill. 2d 604, 136 N.E.2d 785.) While we agree with this general proposition, after considering the instructions as a whole, we believe for the reasons set forth below that they did not fairly define the applicable law.

At the conference on jury instructions, the parties and the trial court agreed that the instructions on aggravated battery and battery should include as a second element, "that the defendant was not justified in using the force which he did." The transcript of proceedings reflects, however, that the trial court failed to include this second element when he read the

instructions relating to aggravated battery and battery to the jury. The trial court, in pertinent part, read the following instructions to the jury: Illinois Pattern Jury Instructions, Criminal, Nos. 11.07 and 11.08 (1968) (hereinafter cited as IPI Criminal) which contained the definitional and issues instructions for aggravated battery causing great bodily harm; IPI Criminal Nos. 11.09(1) and 11.10 which contained the definitional and issues instructions for aggravated battery using a deadly weapon; and IPI Criminal Nos. 11.05 and 11.06 which contained the definitional and issues instructions for battery. The trial court also read to the jury IPI Criminal No. 24.06 which defines justifiable use of force.

The evidence presented by the defendant was sufficient to raise the affirmative defense of self-defense and it thus became the State's burden to prove beyond a reasonable doubt that the defendant was not justified in using the force he used. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) When the defendant raises the defense of justifiable use of force the IPI issues instruction should be modified to include the element "that the defendant was not justified in using the force which he used." As indicated in defendant's brief, the drafters of the Illinois Pattern Jury Instructions recognized, as follows, that modifications to the issues instructions are necessary when an affirmative defense is raised even when an instruction defining the affirmative defense is given:

> "The Committee has concluded that the elements or issues of an affirmative defense should be treated in two ways: *first*, by definition following the definition of the crime with which the defendant is charged * * *, and *second*, in the same instruction with the issues or elements of the crime and the state's burden of proof." (IPI Criminal, Committee Comments 435-36 (1968).)

See also *People v. Stanley Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18; *People v. Joseph Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52.

The instructions read to the jury concerning the elements required for a conviction of aggravated battery and battery failed to inform the jury that the State must prove beyond a reasonable doubt that defendant was not acting in self-defense. Even if the instructions are considered as a whole, this error still remains. IPI Criminal No. 24.06 which defines self-defense does not state that it is the State's burden to prove beyond a reasonable doubt the lack of lawful justification. See *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18, where this court held that the failure to include the element of self-defense in the instruction setting forth the elements of the offense charged against the defendant was error despite the fact that IPI Criminal No. 24.06 was given.

The State, however, further argues that even if the instructions read to the jury when considered as a whole did not accurately inform the jury of

the applicable law, this defect was cured by the court's sending the modified written instructions to the jury for their use during deliberations. We believe, however, that the State's conclusion that the modified written instructions (which correctly stated the law and which were marked neither "given" nor "refused") were sent to the jury is unsupported by the record. In support of its conclusion that the correct modified written instructions were sent to the jury room, the State points out that the record contains duplicate originals of the modified instructions and that the unmodified instructions are all copies and contain the word "modified." The State then concludes that the modified instructions were substituted for the unmodified instructions and then given to the jury. We considered a similar contention in *People v. Wilson* (1976), 43 Ill. App. 3d 583, 357 N.E.2d 81. In *Wilson* the State argued that the inclusion of copies of the proper written instructions in the common law record showed that said instructions went to the jury room. Noting that the record contained only a copy and not the original instructions and that it is the original instructions which go to the jury room, we rejected the State's argument and required an affirmative showing in the record that the correct instructions were sent to the jury room.

■■ The State finally argues that "in the face of a silent record, it must be presumed that the trial judge sent the proper written instructions to the jury, as he is required by law to do." (See, for example, *In re Shannon* (1977), 45 Ill. App. 3d 876, 360 N.E.2d 433.) The instant record, however, is not silent. When the court gave his oral charge to the jury he read the unmodified, incorrect instructions. From the oral charge, it affirmatively appears that the improper written instructions were given as well.

■■ Because the jury was never properly instructed concerning the four counts of aggravated battery, the convictions for aggravated battery must be reversed and the cause, as to the aggravated battery counts, remanded for a new trial.

Defendant next contends that the trial court committed reversible error in denying defense counsel's request to consult with his client during cross-examination and after the trial court had ruled that defendant could be cross-examined concerning a prior arrest. During cross-examination, the defendant testified that Joseph, Sr., was coming at him with a knife and that he picked up a stick for protection. The assistant State's Attorney then asked the defendant if he had "ever used that stick before in that manner." The defendant then volunteered that he had never been arrested before for any kind of violence. Defense counsel objected and during a side-bar conference the trial court ruled that the State could impeach the defendant with a prior arrest for aggravated battery. Defense counsel then requested the opportunity to consult with his client before the cross-examination continued. The trial court refused this

request. The prosecution then elicited testimony from the defendant that he was arrested for aggravated battery on a prior occasion.

■■ In support of the above proposition, defendant cites cases which have held that within the ambit of the right to counsel is the right to consult with one's lawyer during recesses at trial. (*Geders v. United States* (1976), 425 U.S. 80, 47 L. Ed. 2d 592, 96 S. Ct. 1330; *United States v. Allen* (4th Cir. 1976), 542 F.2d 630; *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96.) None of these cases, however, involved the situation where a defense attorney requests a recess during cross-examination for the purpose of consulting with his client. A defendant's freedom to consult with counsel during trial is not absolute. It is limited to a degree by the trial judge's responsibility to maintain decorum and enforce an orderly trial procedure. (*People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96.) We do not believe that under the instant circumstances the trial court abused that discretion in refusing counsel's request to consult with his client.

The defendant argues on appeal that had the cross-examination been interrupted and such consultation allowed, his attorney could have advised him to be truthful and not to be evasive, and also could have ascertained the circumstances of the prior arrest so as to prepare for redirect examination. Defense counsel had adequate opportunity prior to trial to discover defendant's prior arrest record and to instruct his client to be truthful. Prior to his testimony, defendant also took an oath to be truthful. Under these circumstances, the trial court did not err in refusing defense counsel's request to consult with his client during the course of cross-examination.

■■ Defendant finally contends that the trial court committed reversible error in refusing defendant's attempt to elicit testimony from Betty Love, a State's witness, that one of the complainants, Joseph Lewis, Jr., was the father of her child. We first note that the scope of cross-examination is within the sound discretion of the trial court and unless a clear abuse of that discretion resulting in manifest prejudice to the defendant occurs, the trial court's ruling will not be disturbed on review. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398.) We cannot find in the instant case that the trial court's ruling resulted in manifest prejudice to the defendant. During the discussion on the above ruling defense counsel admitted that Ms. Love's testimony was "not damaging * * * except for [Ms. Love's] mentioning seeing a gun." With respect to the gun, Officer King testified that the defendant had a shotgun, and both Joseph, Jr., and Josephine Lewis testified that defendant had a gun. Given this testimony and defense counsel's admission, the trial court's ruling sustaining the objection did not result in manifest prejudice to the defendant and will not be disturbed on appeal.

For the foregoing reasons we affirm the conviction of unlawful use of weapons and reverse and remand the convictions of aggravated battery.

Judgments affirmed in part, reversed in part and the cause is remanded.

GOLDBERG, P. J. and O'CONNOR, J., concur.