THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM CURRIE, Defendant-Appellant.

First District (5th Division)    No. 78-1313

Opinion filed May 9, 1980.—Rehearing denied May 30, 1980.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was found guilty on one count of attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4), two counts of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4), and one count of possession of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)), and not guilty of one count of attempt murder. The trial court merged one guilty verdict for aggravated battery into the guilty verdict for attempt murder and sentenced defendant to concurrent prison terms of 22 years for attempt murder, five years for aggravated battery, and three years for possession of a controlled substance. On appeal defendant raises the following issues (1) the trial court improperly prevented defendant from testifying as to his state of mind at the time of the

shooting; (2) the trial court improperly prevented defendant from impeaching the testimony of two State witnesses; (3) the trial court's rulings improperly precluded defendant from presenting the theory of his case; (4) the trial court erred in refusing to instruct the jury on the use of deadly force to prevent a forcible felony, or defense of a dwelling; and (5) the jury instructions on attempt murder and aggravated battery failed to state the State's burden of proof on the issue of self-defense.

On July 10, 1976, seven Chicago police officers, dressed in plain clothes, attempted to execute a search warrant at 7143 S. Princeton. They left Area Three Headquarters in two unmarked cars and arrived on the 7200 block of Princeton, where they parked the cars, at 10 p.m. Sergeant Miller gave the men their final instructions before they approached the target address. Officers Travis, Foster and Pharr went to the front of the home while the remaining officers, including Sergeant Miller, surrounded the sides and rear of the building.

Inside the building at 7143 S. Princeton were defendant, his brother Joseph Currie, Anthony Brent and Mary Carter. Defendant arrived there at approximately 9 p.m. and had in his possession a .32-caliber revolver, money and heroin. He sold the heroin to one of the others present, and then everyone used it. Defendant remained there to act as a "doorman"; he was to greet prospective drug purchasers at the front door to facilitate any transactions. At 10 p.m. defendant left the kitchen to meet someone at the front door.

Outside on the front porch, Officers Travis and Foster had approached the front entrance to the home. There was an outer storm door and an inner wooden door. According to their testimony, neither man had drawn their weapons. Foster held open the storm door while Travis knocked on the inside door. A voice from inside asked: "Who is it?" Travis replied: "Police Officers." The inside door opened a space of 10 to 12 inches, and defendant stood in the opening. Holding his police badge in his left hand, Travis announced that he was a police officer and had a search warrant. At that point, Travis placed his left hand with the badge through the opening and simultaneously pushed the door in with his right hand. As Travis stepped into the opening, he noticed defendant had moved away from the door and was holding a gun. Defendant fired a single shot in the direction of Travis. Moving backwards, defendant fired two more shots into the opening. One of the bullets struck Travis in the left arm another struck Foster across the left eyelid. Travis drew his weapon and fired five shots as defendant fled down the hallway. Foster, who had fallen onto the porch because of his wound, shouted: "I've been hit." Upon hearing the gun shots, Officer Pharr came to the front door, took Travis and Foster to the squad car, and then drove them to the hospital.

The remaining police officers entered the house and placed the defendant, whom they found in the attic, under arrest. A .32-caliber revolver was found in the living room at the house. The gun contained three live and three spent shells. In the kitchen and in an upstairs room, several small packets of heroin were found.

Defendant was taken to Area Three Headquarters where he was questioned by an assistant state's attorney. After waiving his right to remain silent and to assistance of counsel, defendant gave a statement concerning the shooting. In this statement, he admitted acting as a doorman and firing his gun at the people at the door. He stated, however, that when he answered the door, the individual identified himself as "Frank." In addition, when he began to open the inner door, "the man came in on me." Defendant then fired his gun.

At trial defendant testified that he carried a gun because he was in fear for his life. When he answered the door that evening, the person outside twice identified himself as "Frank." No one identified himself as police. As he opened the inner door to look out, the door was pushed knocking him backwards. Moving back away from the door, he fired his gun without aiming. In answering why he fired, he stated: "Because I thought it was someone who had come to kill me."

## Opinion

■■ Defendant's first argument is that the trial court erred when it sustained the State's objection to questions of defendant designed to elicit defendant's state of mind at the time of the occurrence. Where the issue of self-defense has been raised, defendant's state of mind at the time of the occurrence is relevant and material. (*People v. Harris* (1956), 8 Ill. 2d 431, 134 N.E.2d 315.) Evidence of the violent temper and disposition of the victim and prior threats made by the victim to the defendant are admissible to show the circumstances confronting the defendant, the extent of the apparent danger, and the motive by which defendant was influenced. (*People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640.) Thus, the trial court committed error when it precluded defendant from testifying as to his state of mind at the time of the occurrence. We note, however, that the trial court's rulings to exclude evidence of threats to defendant made by unknown parties was proper.

■■ The error committed by the trial court in this case does not necessitate reversal of defendant's conviction. After the trial judge's initial exclusion of this evidence, defense counsel later returned to this subject and the following exchange took place:

"DEFENSE COUNSEL: Mr. Currie, when that door hit you, did you know who was on the other side of that door?
DEFENDANT: No, sir.

DEFENSE COUNSEL: When that door hit you, and you went back and fired that gun, sir, why did you fire the gun?

DEFENDANT: Because I thought it was somebody that had come to kill me.

DEFENSE COUNSEL: No more questions. Tender the witness."

Thus, defendant was allowed to testify as to his state of mind at the time of the shooting. The election not to pursue this line of questioning further was made by defense counsel, and not by the trial court. A trial court's improper exclusion of evidence does not constitute prejudicial error where substantially the same evidence is admitted subsequently at trial. *People v. Bonner* (1979), 68 Ill. App. 3d 424, 386 N.E.2d 366; *People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.

■■■ The second argument raised involves defendant's attempted impeachment of the testimony of police officers Travis and Foster by the police report of Sergeant Miller. Initially, defendant alleges that the trial court prevented him from laying a foundation for impeachment during the cross-examination of Officer Foster. This foundation consisted of defense counsel's questions of Foster as to what he told Sergeant Miller on the morning following the shooting. On five separate occasions, the trial court sustained the objections of the State to defense counsel's questions. Our examination of the record reveals that four of these five objections were routinely and properly sustained by the trial court for failure to specify the time period when the alleged statements by Foster to Miller were made. (See *People v. Sanders* (1974), 56 Ill. 2d 241 306 N.E.2d 856, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178.) The fifth objection occurred when defense counsel attempted to question Officer Foster on whether he told Sergeant Miller that the inside door of the house was open and the outer door closed when the police officers arrived at 7143 S. Princeton. During a sidebar discussion of this objection, the trial court agreed with the assistant state's attorney that defense counsel could not ask this question while reading from an unidentified police report. When the cross-examination of Foster resumed, defense counsel asked whether he told Sergeant Miller anything about the position of the doors. Foster said he didn't recall. Regardless of whether the first objection was properly sustained, defendant was subsequently able to elicit the necessary answer to lay his foundation for impeachment. No prejudice to the defendant can be found on this point. *Bonner; Driver.*

■■ Defendant also maintains the trial court improperly prevented him from impeaching the testimony of Foster and Travis with the police report of Sergeant Miller. It has been held that the testimony of a police officer cannot be impeached by the contents of a police report which he neither prepared nor signed. (*People v. Lewis* (1979), 75 Ill. App. 3d 259,

393 N.E.2d 1098; *People v. Zazzetti* (1972), 6 Ill. App. 3d 858, 286 N.E.2d 745.) No error was committed by the trial court's precluding defendant from using Sergeant Miller's police report to impeach the testimony of Foster and Travis.

Additionally, defendant maintains that the police report was a proper vehicle for the impeachment of Sergeant Miller. Although the police report describes the position of the doors when the police arrived to execute the search warrant, neither Foster nor Travis are credited by the police report as the source of this description. Consequently, the description contained in the police report does not impeach Sergeant Miller's lack of recall as to what Travis or Foster told him about the position of the doors. The trial court properly sustained the State's objection on this point.

Defendant's third argument is that the trial court's rulings prevented him from presenting the theory of his case. According to the defendant's testimony, the police officers concealed their identity when he asked them to identify themselves. As defendant began to open the inner door for a person he believed to be "Frank," one of the police officers suddenly pushed the door into him and knocked him backwards. During the cross-examination of police officers Foster and Coffy, each was asked by defense counsel whether he had been previously involved in narcotics raids where the suspected contraband was destroyed before police officers could seize it. On each occasion, the State objected to the question on the grounds of relevance and materiality, and the trial court sustained the objection. Finally, on closing argument defense counsel attempted to argue that the police officers had a motive to lie on the stand; to cover up their practice of using a ruse to gain entrance to private premises and thus, prevent the destruction of contraband. The trial court sustained the State's objection to this argument and instructed the jury to disregard the previous comments of defense counsel.

At each of these points, as defense counsel attempted to corroborate the testimony of defendant by providing an explanation for why the police officers would use a ruse to enter the house, the trial court held that the past conduct of these police officers was not relevant to the present case. We believe a defendant should be given all reasonable latitude to provide evidence in support of his innocence. (*People v. Durr* (1978), 58 Ill. App. 3d 525, 374 N.E.2d 873.) This latitude, however, does not encompass the admission of irrelevant and immaterial testimony into evidence. (*Durr.*) The test for relevancy is whether the fact offered tends to prove a disputed fact or render the matter in issue more or less probable in light of logic, experience and accepted assumptions of human behavior. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) The determination of relevancy is a matter for the sound discretion of the

trial court. (*People v. Radford* (1967), 87 Ill. App. 2d 308, 232 N.E.2d 100.) Where the record establishes a sufficient basis for the trial court's decision and no abuse of discretion to the prejudice of defendant, we will not alter the trial court's ruling. *Gardner.*

■■ In the present case, defense counsel's questions involve the conduct of police officers in unrelated incidents, where the circumstances may have been entirely different, and which may have occurred from one month to several years prior to the incident in this case. These factors alone greatly reduce any relevance of this matter. Moreover, absent a formal offer of proof, we cannot even be sure that these police officers have ever been on narcotic raids where the contraband was destroyed or that they employed deception or trickery to gain access to private premises. Even if we were able to assume these facts exist, their relationship to the police officer's actions in the present case would be tenuous at best. Consequently, we hold that the trial court acted within its discretion in excluding this evidence.

■■ Defendant's fourth argument attacks the trial court's refusal to instruct the jury on justifiable use of force to prevent a forcible felony, or on defense of dwelling. As defendant points out, a defendant is entitled to instructions on the justifiable use of force where there is slight evidence in support of that defense. (*People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850; *People v. Dortch* (1974), 20 Ill. App. 3d 911, 314 N.E.2d 324.) This caveat cannot be stretched to the point where the "merest factual reference or witness's comment" require the giving of instructions. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 541, 349 N.E.2d 31.) In our opinion, the evidence in this case does not meet the threshold level of slight evidence on the issues of the use of deadly force to prevent a forcible felony, or in defense of dwelling. This is especially true where, as here, defendants' own testimony negates the viability of these defense theories. (See *Bratcher.*) Defendant testified that he fired at the police officers out of fear for his own life. No testimony was adduced that defendant acted in defense of dwelling or to prevent the commission of a forcible felony. We therefore conclude that the trial court correctly refused to give the requested instructions.

The final issue raised by defendant involves the jury instructions given on the State's burden to prove the elements of attempted murder and aggravated battery. Both of these instructions (Illinois Pattern Jury Instructions, Criminal, Nos. 6.07 and 11.08(a) (1968) (hereinafter IPI Criminal)) failed to assign to the State the burden of proving beyond a reasonable doubt that defendant was not justified in using the force that he did. In general, where the evidence raises the issue of self-defense, the State has the burden on this issue. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302,

95 S. Ct. 506.) This assignment of the burden of proof should be reflected in the jury instructions as follows:

> "The elements or issues of the defense of self-defense should be treated in two ways: first, by definition following the definition of the crime with which defendant is charged (this was done in the instant case) and second, in the same instruction with the issues or elements of the crime and the State's burden of proof. The jury should receive a *single* instruction covering all of the issues. (IPI Criminal, at 436; IPI No. 25.05.) An example is given at IPI Criminal, at 460. Also see *People v. Joyner*, 50 Ill. 2d 302, 307." (*People v. Wright* (1974), 24 Ill. App. 3d 536, 541, 321 N.E.2d 52, 56; accord, *People v. Lewis* (1977), 53 Ill. App. 3d 89, 368 N.E.2d 619; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.)

Thus, defendant alleges as error the failure to instruct the jury, inside a single instruction (IPI Criminal No. 25.05), that the State had the burden of proving beyond a reasonable doubt that defendant was not justified in the use of force that he exercised.

The State maintains that defendant has waived the issue by failure to tender the proper jury instruction and to object to the instruction that was given. Failure to object to proposed instructions operates as a waiver of error contained in the instructions. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Our supreme court has summarized the purpose of the waiver rule as follows:

> "The reason for this waiver rule, as stated in many of our appellate court cases, is that timely objections to defective instructions permit the court to correct the defects before the instructions are given, and do not therefore permit a party failing to object to gain the advantage of obtaining a reversal based upon his own failure to act." (*Roberts*, 75 Ill. 2d 1, 11, 387 N.E.2d 331, 336.)

Moreover, the United States Supreme Court has said that it is the "rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." (*Henderson v. Kibbe* (1977), 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736.) Since defendant has technically waived this issue by failure to object at trial, the plain error doctrine forms the only basis for appellate review. Ill. Rev. Stat. 1977, ch. 110A, par. 451(c).

Supreme Court Rule 451(c) provides that for jury instructions in criminal cases "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." This exception to the general rule of waiver has not been broadly interpreted by our supreme court. (*People v. Roberts* (1979), 75 Ill. 1, 387 N.E.2d 331.) Consistent with this approach, we note that the United States Supreme

Court has stated that appellate review of a trial court error which was not obviously prejudicial and which the defense did not raise at trial was "extravagant protection." (*Namet v. United States* (1963), 373 U.S. 179, 190, 10 L. Ed. 2d 278, 286, 83 S. Ct. 1151.) Thus, the plain error concept forms a "limited exception" to the waiver rule and will be employed to correct "grave errors" or where the case is close factually and fundamental fairness requires that the jury be properly instructed. (*Roberts*, 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337.) Upon review of the record in this case, we do not find the evidence to be close factually on the issue of self-defense; hence, only the existence of grave error will invoke our consideration of this matter.

We note initially that the question of whether the failure to give the proper issues instruction (IPI Criminal No. 25.05) in self-defense cases constitutes plain error has been decided before. This court and two other divisions of this district have held that the alleged error was waived, and not subject to appellate review under the plain error exception. (*People v. Spaulding* (1979), 68 Ill. App. 3d 663, 386 N.E.2d 469, *cert. denied* (1979), 444 U.S. 929, 62 L. Ed. 2d 186, 100 S. Ct. 271; *People v. Lynch* (1976), 43 Ill. App. 3d 1039, 358 N.E.2d 17; and *People v. Robinson* (1974), 21 Ill. App. 3d 343, 315 N.E.2d 95. Contra, *People v. Lewis* (1977), 53 Ill. App. 3d 89, 368 N.E.2d 619; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18; and *People v. Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52.) Because of the difficulties courts of review encounter in determining when to invoke the plain error exception to the waiver rule, we feel compelled to go beyond the mere recitation of existing precedent.

■■■ When determining whether plain error was committed in instructing the jury, a court of review should examine all the instructions as a whole. (*People v. Lewis* (1977), 53 Ill. App. 3d 89, 368 N.E.2d 619; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.) We examine the instructions as a whole to determine whether their cumulative impact cures or lessens the prejudice caused by the alleged error. In this case, the jury received definitional instructions on attempt murder (IPI Criminal No. 6.05), aggravated battery (IPI Criminal No. 11.09), and most importantly, self-defense (IPI Criminal No. 24.06). Additionally, the jury received instructions on the presumption of innocence and the State's burden of proof beyond a reasonable doubt. (IPI Criminal No. 2.03.) Two other facts brought the jury's attention to the State's burden of proof beyond a reasonable doubt. First, during the closing argument, defense counsel told the jury that the State had the burden of proof on the issue of self-defense. Although statements of law made by counsel during closing argument cannot and do not replace proper jury instructions, we feel they are a reliable factor to be evaluated by an appellate court in determining whether plain error exists. (See *United States v. Jackson* (7th Cir. 1978),

569 F.2d 1003, *cert. denied* (1978), 437 U.S. 907, 57 L. Ed. 2d 1137, 98 S. Ct. 3096.) Second, the State's burden of proving that defendant acted without lawful justification was communicated to the jury in the reading of the indictment by the trial court. (See *Henderson v. Kibbe* (1977), 431 U.S. 145, 52 L. Ed. 2d 203, 97 S. Ct. 1730.) The final factor to be considered is the overwhelming strength of the State's evidence against defendant. The testimony of Officer Travis and Foster established they had properly announced their office when at the front door and did not use force or violence to enter the house. Even accepting defendant's testimony to be true, the sudden pushing of a door into another person does not justify as a response firing three gun shots at the person on the other side of the door. Based on all of the above reasons, we hold that this issue does not raise a "grave error" which would require appellate review under the plain error exception.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.