392 So.2d 950 (1980)
Frank Vincent BOVA, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1271.
District Court of Appeal of Florida, Fourth District.
December 31, 1980.
Rehearing Denied February 11, 1981.
*951 Alan H. Schreiber, Public Defender, and Peter F. LaPorte, Asst. Public Defender, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
Frank Vincent Bova appeals his conviction and sentence for first degree murder. We affirm.

I
Of the several points urged on appeal, only two merit extended discussion. The first centers on defendant's contention that the police induced pre-trial statements from him by impermissible promises. Thus, he claims, the statements were involuntary and should not have been admitted into evidence. To fully understand this contention, a bit of background is helpful.
Frank Bova associated with a group known as the Cravero gang. Reputedly, it was engaged in large-scale narcotics and other illicit activity along the eastern seaboard which brought it to the attention of the federal authorities. During the ensuing federal investigation, Bova agreed to become a police informant and supply information on the gang. He met regularly with federal agents and also developed an acquaintanceship with local police officers involved in the Cravero investigation.
On June 6, 1977, Bova attended a prescheduled meeting at the U.S. Marshal's office in Miami. In addition to Inspector Noe of the Marshal's Service, several officers from the Dade County Public Safety Department were present. Upon arrival, Bova was told that the Dade officers had a warrant for his arrest. They read the warrant and then informed Bova of his Miranda rights. All of this is undisputed. The difficulty originates with the following statement made to Bova by Lieutenant Havens of the Dade County Public Safety Department:
I told Mr. Bova that I had known him for a long period of time; that I had never lied to him in the past, that I have always been above board, honest with him, and to the best of my knowledge he had been that way with me as it concerned the Cravero investigation.
I advised him that the charge was murder in the first degree, not as he had assumed a charge involving a firearm in Louisville, Kentucky; and that I could not promise him anything other than the fact that I knew him personally; that I would apprise any court of competent jurisdiction at a subsequent date of his prior cooperation with the government and with the Public Safety Department; and that, in fact, that most of the people that he testified against in the federal court, Cravero, all were incarcerated at Raiford  that I would apprise the Court that based on Bova's prior cooperation with the government that his life would be in jeopardy if he were convicted of a crime and subsequently sentenced to Raiford Prison.
At that point Mr. Noe reiterated also the same information; also advised Mr. Bova that he couldn't promise him anything if convicted of this crime where he would *952 go to prison, but still he would promise Mr. Bova that regardless of the outcome of the case that he would apprise the court of his past cooperation.
Dissecting the above statement, we find two representations: (1) that the police would advise the court of the defendant's present cooperation, and (2) that the police would inform the court of the defendant's past role as a police informant and of their belief that the defendant's life would be in jeopardy if he was sent to Raiford prison. Defendant now argues that these representations, made after he had been warned of his Miranda rights and after he had agreed to give a statement, constitute implied or direct promises of benefit which were calculated to play upon his hopes and fears and which rendered his subsequent statement involuntary.
The legal effect of implied promises upon a defendant's confession was fully discussed by the court in Fillinger v. State, 349 So.2d 714, 715-16 (Fla. 2d DCA 1977), cert. denied, 374 So.2d 101 (Fla. 1979):
In order for a confession to be admissible, the state has the burden of showing that it was freely and voluntarily given. State v. Chorpenning, 294 So.2d 54 (Fla. 2d DCA 1974). It cannot have been obtained by any direct or implied promise, however slight. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963). An accused from whom a confession is sought should be free from the influence of either hope or fear, and a confession must be excluded if the totality of the surrounding circumstances were calculated to delude the accused or to exert undue influence over him. M.D.B. v. State, 311 So.2d 399 (Fla. 4th DCA 1975); Jarriel v. State, 317 So.2d 141 (Fla. 4th DCA 1975). If the interrogator induces the accused to confess by using language which amounts to a threat or promise of benefit, then the confession may be untrustworthy and should be excluded. Frazier v. State, 107 So.2d 16 (Fla. 1958); State v. Chorpenning, supra.
Also, it has been held that "[d]etermining whether a confession is voluntary requires an assessment of human motivation and behavior. One factor, by itself, is seldom determinative." United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir.1978). In the case at bar the trial judge had ample opportunity to view the witnesses, gauge their motivation, and assess the impact of the two representations. His determination, arrived at after evaluating the totality of the circumstances, Reddish v. State, 167 So.2d 858 (Fla. 1964), comes to this court clothed with a presumption of correctness, Churney v. State, 348 So.2d 395 (Fla. 3d DCA 1977). It is our duty to interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain the trial court's ruling. McNamara v. State, 357 So.2d 410 (Fla. 1978).
The trial court determined that the officer's representations were neither an implied promise of leniency nor an otherwise impermissible inducement. The court found defendant's statements to be voluntary and therefore permitted their admission into evidence. This decision is well supported in the record. Considering first the question of where the defendant might be incarcerated, the record clearly demonstrates this matter originated with the defendant, not the police. Bova testified he had this concern long before he talked to Lieutenant Havens. He had personally witnessed Cravero's efforts to seek retribution against those who had betrayed him. Thus, Bova's concern for his safety in prison was genuine and justified, but the police did not play upon this concern to manipulate Bova and induce a statement. Unlike the neophyte defendant in Fillinger, supra, who succumbed to police-induced fears, Frank Bova knew exactly what was taking place. He was a veteran of the criminal justice system who knew the officers with whom he was dealing and who had a realistic appreciation of what lay ahead. His decision to give a statement was motivated by self-interest; he felt it would exonerate him. This is obvious from the tone and content of the statement. From the outset, *953 Bova claimed to have shot Pucci in self-defense. He consistently testified that he had nothing to hide and that his actions were justified. Further, Lieutenant Havens did not promise Bova that if he confessed he would be assured of confinement in a place other than Raiford. Havens merely said that he would inform the court of Bova's concern for his safety. Such a representation is insufficient to render defendant's statement involuntary.
Turning next to the representation that the police would inform the court of defendant's cooperation, this too was not a promise of leniency or any other benefit. "A simple representation to a cooperating confessor that the fact of his cooperation will be made known to prosecuting authorities [or to the court] is insufficient to render a confession involuntary." United States v. Curtis, 562 F.2d 1153, 1154 (9th Cir.1977), cert. denied, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978). Accord, United States v. Hart, 619 F.2d 325 (4th Cir.1980); State v. Williams, 358 So.2d 1094 (Fla. 1st DCA 1978); State v. Mullin, 286 So.2d 36 (Fla. 3d DCA 1973).

II
Defendant's next point is much more troublesome; he alleges that his right to assistance of counsel was impermissibly impaired. The background to this charge lies in the fact that defendant took the stand in his own behalf and testified at length. During cross-examination, in response to a question, Mr. Bova said, "I don't even know. I am confused in what you are saying. I am sitting here confused. May I have a ten minute break? I am upset right now." Defense counsel immediately asked for, and obtained, a fifteen minute recess. At this point there is a break in the record and we do not have a verbatim account of the court's initial admonition. Apparently, however, the court instructed the defendant not to talk with anyone about the case during the recess. Defense counsel objected, citing defendant's Sixth Amendment right to effective assistance of counsel and his correlative rights under the Florida Constitution. Defense counsel further stated, "I want to talk with Frank (the defendant). I want to talk about his testimony... . I wish to talk to him about his testimony that is going to be coming from Mr. McGee (the prosecutor)." At the state's behest, the court adhered to its prior ruling, saying "I don't think at this time that you have a right to confer with your client until he has testified as to the rest of his cross examination." The court further explained that counsel could invoke defendant's Fifth Amendment privilege but that it would be improper to discuss possible cross-examination testimony. A fifteen minute recess was then declared.
Thus framed, the question is whether a trial court, for the duration of a brief recess, has discretion to order a defendant who is in the midst of cross-examination, to refrain from talking with his attorney about his testimony. Several courts have held that it is constitutionally impermissible to limit attorney-client consultation during even a brief recess. See United States v. Allen, 542 F.2d 630 (4th Cir.1976), cert. denied, 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977); United States v. Bryant, 545 F.2d 1035 (6th Cir.1976); Pendergraft v. State, 191 So.2d 830 (Miss. 1966); Commonwealth v. Logan, 456 Pa. 508, 325 A.2d 313 (1974); Commonwealth v. Vivian, 426 Pa. 192, 231 A.2d 301 (1967); Commonwealth v. Barber, 250 Pa.Super. 427, 378 A.2d 1011 (1977); Annot., 5 A.L.R.3d 1360 (1966). Indeed, the same rule has been applied to civil cases. Potashnick v. Port City Construction Co., 609 F.2d 1101 (5th Cir.1980); Cartin v. Continental Homes of New Hampshire, 134 Vt. 362, 360 A.2d 96 (1976). Nonetheless, we decline to hold that the minimal restraint imposed by the trial court in this case constituted an abuse of discretion, or was an impermissible impairment of the defendant's Sixth Amendment right to assistance of counsel, or a violation of defendant's correlative rights *954 under Article I, Section 16 of the Florida Constitution.[1]
We start by examining the scope of defendant's rights under the Sixth Amendment's assistance of counsel clause. In Herring v. New York, 422 U.S. 853, 857, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975), Mr. Justice Stewart offered this succinct analysis:
[T]he right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments.
Herein lies the key to the case. Although the right to assistance of counsel includes the right to consult with counsel, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the right to consult is not absolute. People v. Lewis, 53 Ill. App.3d 89, 11 Ill.Dec. 68, 368 N.E.2d 619 (1977). It is circumscribed by the "traditions of the adversary factfinding process," the most obvious of which is cross-examination. Some have likened this hallmark of Anglo-Saxon jurisprudence to a crucible for "[i]t has always been deemed the surest test of truth and a better security than the oath."[2] The United States Supreme Court has held that "[c]ross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the `accuracy of the truth-determining process.'" Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). Cross-examination is "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).
A defendant's election to take the witness stand in his own behalf carries with it an implied agreement to undergo the rigors of cross-examination. An integral part of the test is that the heretofore unrestricted right to consult with counsel is briefly curtailed while a defendant submits to the questioning of the prosecutor and the scrutiny of the jury. It is universally recognized that he must answer alone. And with the one exception of a defendant's absolute right to confer with counsel regarding the invocation of the Fifth Amendment privilege, it is generally agreed that the court possesses broad discretion to deny a request for a mid-interrogation consultation, People v. Miller, 185 Cal. App.2d 59, 8 Cal. Rptr. 91 (1960), appeal dismissed 365 U.S. 568, 81 S.Ct. 755, 5 L.Ed.2d 807 (1961), or a mid-cross-examination recess. People v. Lewis, supra.
However, curtailment of communication during cross-examination does not mean that a defendant is without assistance of counsel while on the witness stand. To the contrary, a defendant is entitled to the "guiding hand of counsel at every step in the proceedings against him." Powell v. Alabama, supra, 287 U.S. at 69, 53 S.Ct. at 64. It is especially necessary during cross-examination when counsel's assistance must take the form of vigilant attention to the proceedings, and, where appropriate, the imposition of proper objections to insure that the tone of cross-examination is not shrill, that the defendant is not badgered, *955 that the question is not compound, and that the defendant is afforded ample opportunity to fully explain and complete his answer. In this fashion, the truth-seeking process of cross-examination is enhanced without impairing defendant's right to assistance of counsel.
Given that a defendant's right to consult may be legitimately curtailed during cross-examination, this case poses the narrow question whether a court may restrict attorney-client consultation during a brief recess which occurs in the midst of cross-examination. We answer in the affirmative and hold that the trial court is vested with such discretion. Yet, we emphasize that it must be exercised with caution.
The leading case in this area is Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), in which the Supreme Court ruled that a defendant's Sixth Amendment rights were violated by a court-imposed restriction against attorney-defendant consultation during a 17-hour overnight recess. The court emphasized that the duration and the customary use of the recess were crucial factors in its decision.
[I]t was an overnight recess, 17 hours long. It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. 425 U.S. at 88, 96 S.Ct. at 1335.
Clearly then, all recesses are not the same. Some are customarily utilized as attorney-client consultation periods in which trial strategy is modified and other preparations are made for the ongoing defense. In these instances, a defendant's right to consult with counsel is paramount and cannot be impaired. See, e.g., Stripling v. State, 349 So.2d 187 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1220 (Fla. 1978); United States v. Conway, 632 F.2d 641 (5th Cir.1980).
However, the Supreme Court was careful to qualify its holding in Geders, supra, by noting that the trial judge is "not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct... ." The court said:
In addition the trial judge, if he doubts that defense counsel will observe the ethical limits on guiding witnesses, may direct that the examination of the witness continue without interruption until completed. If the judge considers the risk high he may arrange the sequence of testimony so that direct- and cross-examination of a witness will be completed without interruption. That this would not be feasible in some cases due to the length of direct- and cross-examination does not alter the availability, in most cases, of a solution that does not cut off communication for so long a period as presented by this record. Inconvenience to the parties, witnesses, counsel, and court personnel may occasionally result if a luncheon or other recess is postponed or if a court continues in session several hours beyond the normal adjournment hour. In this day of crowded dockets, courts must frequently sit through and beyond normal recess; convenience occasionally must yield to concern for the integrity of the trial itself. 425 U.S. at 90, 96 S.Ct. at 1336.
Inasmuch as the trial court is expressly authorized to structure the proceedings so as to prevent attorney-client consultation during cross-examination, we are compelled to conclude that the court's discretion is sufficiently broad to achieve the same end by imposing a restraining order during a brief recess. As long as the curtailment of communication is brief and necessary to the administration of justice, it is constitutionally tolerable. We note that the trial judge in the case at bar was especially sensitive to the issue of attorney-client *956 consultation. The court provided an opportunity for consultation prior to defendant's direct examination, and, before the incident giving rise to this appeal, agreed to arrangements so that defense counsel could meet with the defendant in a holding cell during the luncheon recess. It is also well to recall that the court exercised its discretion and acceded to defendant's request for a brief recess so that he might collect his thoughts. Having obtained this sought-for-benefit, defendant cannot complain of a reasonable limitation. To hold otherwise would encourage a party to attempt to sow reversible error into the record. See United States v. Leighton, 386 F.2d 822 (2d Cir.1967), cert. denied, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968). Thus, we find no abuse of discretion in the trial court's order. Yet again we emphasize the narrow scope of our holding; it embraces a brief recess in the midst of cross-examination which did not usurp time customarily available for planning and consultation. Accordingly, defendant's conviction and the judgment are AFFIRMED.
LETTS, C.J., and GLICKSTEIN, J., concur.
NOTES
[1] Assuming arguendo that the restraint imposed in this case was constitutionally impermissible, we are satisfied beyond a reasonable doubt that the error was harmless. Though earlier cases have suggested that "`[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial,'" United States v. Venuto, 182 F.2d 519, 522 (3d Cir.1950), we do not believe this is an appropriate formulation for the case at bar. Rather, we would apply the rule in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967), that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." See also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Winston, 447 F.2d 1236 (D.C. Cir.1971); Clark v. State, 363 So.2d 331 (Fla. 1978).
[2] Wellman, The Art of Cross-Examination (4th ed. 1936).