THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NICHOLAS F. BROPHY *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 80-1263, 80-1264 cons.

Opinion filed May 28, 1981.

Nicholas T. Kitsos, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendants, Nicholas Brophy and Henry Doig, were found guilty of committing an aggravated battery and battery upon Brian Boyle and Kenneth Anderson. Defendants were found not guilty of the charge of attempt murder. Brophy was sentenced to a two-year prison term; Doig was sentenced to 30 months probation.

On appeal defendants contend: (1) the trial court erred in failing to properly instruct the jury that the State had the burden to prove beyond a reasonable doubt that the defendants were not acting in self-defense and defense of others; (2) the trial court abused its discretion by allowing into evidence defendant Brophy's statements made prior to the incident; (3) the trial court erroneously denied defendants' motion for a directed verdict on the attempt murder charge and thereby prejudiced their defenses as to the other charges; (4) the defendants were not proved guilty beyond a reasonable doubt; (5) the trial court erroneously denied defendant Brophy's motion for severance; and (6) the trial court erroneously imposed excessive sentences on the defendants.

We reverse the convictions and remand for a new trial. In view of our decision to reverse, we need only address defendants' contentions concerning the following alleged errors: (1) the trial court's failure to give the jury the proper self-defense and defense of others instructions; (2) the failure of the State to prove defendants guilty beyond a reasonable doubt; and (3) the trial court's improper denial of defendant Brophy's motion for severance.

*The State's Evidence*

Marion Gentile testified that on the evening of December 2, 1977, she hosted a surprise birthday party for Brian Boyle. The party ended the following morning at 1:30 a.m. At 2:15 a.m., she, Boyle, Kenneth Anderson, and John Jankovich left her house and went to the Markey Lounge. Shortly afterwards, the same group left the lounge and went to another lounge to meet Boyle's mother. Sometime later, Anderson, Boyle, Gentile, and Jankovich returned to the Markey Lounge. They drove there in one car.

Gentile also asserted that when they arrived at the Markey parking lot, Anderson and Boyle got out of the car. The two were arguing about whether to go to a restaurant for breakfast. At this time, Jankovich was in the driver's seat of the car and Gentile was in the front passenger seat. Gentile saw two people coming around the corner. She identified these people at trial as defendants Brophy and Doig.

Gentile further asserted that the defendants called to Boyle and

Anderson and said "Stay out, its early, can't you hold your liquor * * *."
Either Boyle or Anderson replied that defendants should "Stay out of it"
and mind their own business. Gentile testified that the men then "ap-
proached each other." At this point, Doig ran to his car. Doig removed
jumper cables from his car trunk. He then ran back to the men and began
striking them with the cables. As Doig struck their heads with the cables,
Boyle and Anderson protectively pulled their coats over their heads.
Gentile then saw Anderson and Boyle fall to the ground. Doig then
walked back to his car and placed the jumper cables into the car trunk.
Gentile identified the cables which Doig had used in the incident.

Gentile further testified that as Doig was carrying the cables back to
the car trunk she saw Brophy "brutally kick" the heads of Anderson and
Boyle while they lay on the ground. Brophy kicked Anderson and Boyle
"at least" 10 times. During this time, Gentile heard Brophy tell Boyle to get
up and fight like he should and that he, Brophy, did not like cowards.
Gentile also heard Brophy tell Anderson that he "didn't like fat fighters,
get up and fight."

Gentile further stated that she did not leave the car until Doig was at
his car putting the jumper cables in his car trunk. She also stated that she
was standing five feet from Brophy while he kicked Boyle and Anderson.
After seeing the kicking, she ran into the lounge to call the police. When
she returned to the scene of the incident the police already had arrived.
Anderson and Boyle were on the ground, bleeding profusely, and they
appeared to be unconscious. Gentile also stated that during the alterca-
tion, she did not observe Boyle or Anderson strike either of the defend-
ants. She also asserted that when Doig went to his car, she was unable to
see Brophy or Anderson and Boyle.

On cross-examination, Gentile acknowledged that she had to turn her
head to the right to see Anderson and Boyle standing in back of the car.
She also admitted that when she said the two groups of men approached
each other she meant that Doig and Brophy, who were walking in a
westerly direction, continued walking west on the sidewalk. They never
left the sidewalk. Boyle and Anderson were standing near the door of
Anderson's car which was in the lounge parking lot. Anderson's car was
near the sidewalk. Gentile acknowledged that Boyle and Anderson left
the side of the car and walked up to the sidewalk where Brophy and Doig
were walking.

Gentile also asserted that as Doig ran to his car she did not hear
anyone call for help. She did not hear any provocative language nor did
she hear defendants ask Anderson and Boyle to come to the sidewalk. She
further stated that she had to put her head outside the car window to see
Doig run to the trunk of his car. She was not watching the other three men
during the time she observed Doig.

Gentile also testified that as Doig was running back to his car, Doig came up to Jankovich and said, "Do you want to see if you want a little taste * * *." She then saw Doig strike Jankovich. Gentile further explained that Jankovich got out of the car before she did. He went over to Boyle and Anderson who were lying on the ground. Gentile, at this point, got out of the car and went into the Markey Lounge to call the police.

Officer McCallister testified that when he arrived on the scene, both Anderson and Boyle were lying on the ground, unconscious. Their faces were very swollen. Brophy said to McCallister, "Honestly, I only used my hands, * * * I might have kicked him once or twice, but I only used my hands." Brophy also told him that Anderson and Boyle jumped him and that Doig came to his assistance and helped him get his hands free. Brophy additionally stated that he had had some boxing experience. After Brophy and Doig were brought to the police station, McCallister inventoried the jumper cables and Brophy's shoes. The shoes were blood stained. McCallister also asserted that Brophy's lip appeared to be swollen, but Brophy had said he did not need medical attention since it was a birthmark.

Brian Boyle testified that on the evening of December 2, 1977, he attended a birthday party in his honor given by his friend, Marion Gentile. He acknowledged that during the party he consumed "a couple" of beers and shots of hard liquor. He also asserted he could not remember leaving the party but only waking up in the hospital. Boyle further testified that one week before the incident, he saw defendant Brophy for the first time at the Markey Lounge. Boyle was there with his sister, Barbara Anderson, and other friends. Defendant Brophy argued with Barbara, and then broke a glass on the table. Anderson moved in front of Barbara. Someone laughed and defendant Brophy said "Something to the effect of 'you won't be laughing after I'm through with your boyfriend.'" Boyle did not see defendant Doig in the lounge that night.

Kenneth Anderson testified that on December 2, 1977, he attended a birthday party for Boyle. He could not remember leaving the party; he could only remember waking up in the hospital. At that time, his face was badly swollen, and the temporary bridge on his front teeth was missing. His eyes were swollen shut, and a doctor had to remove his contact lenses. Anderson also stated that one week before the incident here, he saw defendant Brophy in the Markey Lounge. His testimony concerning the occurrence at the lounge on that occasion was substantially the same as that of Boyle. Anderson had never seen Brophy before this prior incident.

Dr. George Bryar, a neurosurgeon, testified that he treated both Boyle and Anderson. Anderson had multiple facial abrasions and contusions. Bryar determined that both Anderson and Boyle suffered from a cerebral concussion (a loss of consciousness without neurological impair-

ment). He also determined that both Anderson and Boyle had retrograde amnesia since they could remember only events prior to their injuries. Bryar further asserted that blood tests performed in the emergency room revealed the presence of alcohol in the bloodstream of both Boyle and Anderson. Neither Boyle nor Anderson sustained permanent neurological injuries.

On cross-examination, Bryar admitted it was possible for someone to have memory loss if he had been drinking. In Bryar's opinion, however, the cerebral concussions and memory loss sustained by Boyle and Anderson were due to blows to the head.

### The Defense

Defendant Doig testified that he never had seen either Anderson or Boyle prior to the fight in the early morning of December 3, 1977. As he left the Markey Lounge that morning to get his car in the parking lot, he and Brophy saw Anderson and Boyle. Anderson and Boyle were arguing but he did not pay any attention to them. Brophy and Doig, moments before, had attempted to enter the lounge, but they left upon discovering that there was an entry charge.

As they walked back to their car, Doig walked ahead of Brophy. He passed Anderson and Boyle who continued arguing and, as he continued to walk on, he suddenly heard Brophy scream, "Hank." He turned and observed Anderson and Boyle. They were bent over Brophy. They appeared to be beating him. Doig ran to his car and removed some jumper cables with which to scare off the two men. When he reached them, one man was choking Brophy and both men were punching him. At that point, Doig said he hit one of the men with the cables three or four times and pulled him away from Brophy. This man grabbed Doig's leg but Doig was able to free himself.

Doig then saw another man get out of a parked car and come towards him. Doig told this man that the fight had ended and that his friend, Brophy, had been beaten. The other man said that Doig still should not have hit the men with jumper cables. When the man kept coming closer towards Doig, Doig slapped him. The man then went back to his car.

When Doig returned to Brophy, he saw Brophy kick one of the men and scream "Don't you ever jump on me again." After pulling Brophy away, he went into the lounge to ask an employee to call an ambulance. When he again returned to the scene of the fight, he again saw Brophy kicking one of the men. He pulled Brophy away.

Defense counsel read to the jury the stipulated testimony of Dr. Archbald, who on the night of the incident treated Brophy's superficial cut to the eye. Defendant Brophy did not testify.

942

I

Defendants first contend that reversible error occurred because the trial court failed to instruct the jury of the State's burden of disproving beyond a reasonable doubt the defendants' affirmative defenses of self-defense and defense of others. We agree.

Defendants were charged by information with one count of attempt murder (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 9—1), two counts of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(a), 12—4(b)(1)), and one count of battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—3). On each count, the jury was given an issues instruction which set forth the elements of the charges which the State was required to prove. None of these instructions made any reference to the State's burden of proof on the issues raised by defendants or self-defense or defense of others. However, the instruction which defines the elements of self-defense and defense of others, also referred to as "justifiable use of force," was given. Illinois Pattern Jury Instructions, Criminal, No. 24.06 (1968) (hereinafter IPI).

The State does not dispute that the defenses of self-defense and defense of others were properly raised at trial. The State argues, however, that the jury was adequately instructed because an instruction defining the elements of the affirmative defenses was given. The State also urges that since the jury was instructed that the State had the burden of proving beyond a reasonable doubt that defendants had committed all of the elements of the crimes with which they were charged, the jury was "in fact" informed that the State had to prove beyond a reasonable doubt that the defendants were not acting in self-defense or in defense of another. However, we do not find the State's position to be tenable. We do not agree that the jury was "in fact" so instructed, nor do we believe that the jury could possibly make such an inference from the instructions only defining the elements of the offenses.

The evidence presented by defendant Doig was sufficient to raise the defense of self-defense and defense of others. It thus became the State's burden to prove beyond a reasonable doubt that the defendants were not justified in using the force they used. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.

When defendants raise the defense of justifiable use of force, the Illinois Pattern Jury issues instruction should be modified to include the element " 'that [the State has the burden to show that] the defendant was not justified in using the force which he used.' " (*People v. Lewis* (1977), 53 Ill. App. 3d 89, 93, 368 N.E.2d 619, 623.) As the *Lewis* court noted, modifications to the issues instructions are necessary when an affirmative defense is raised even when an instruction defining the affirmative defense is given—as was the case here:

" '[The drafter of the Illinois Pattern jury instructions] has concluded that the elements or issues of an affirmative defense should be treated in two ways: first, by definition following the definition of the crime with which the defendant is charged * * *, and second in the same instruction with the issues or elements of the crime and the state's burden of proof.' (IPI Criminal No. 25.00, Committee Comments, at 435-36 (1968).)"

*People v. Lewis* (1977), 53 Ill. App. 3d 89, 93, 368 N.E.2d 619, 623. See also *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532; *People v. Whitney* (1980), 86 Ill. App. 3d 617, 408 N.E.2d 268.

■■ The instructions given in this case defining self-defense and defense of others do not state, as is required (*People v. Lewis*), that it is the State's burden to prove, beyond a reasonable doubt, that defendants acted without lawful justification. Thus, the trial court should have allowed defendants the opportunity to modify the instructions to include the State's burden of disproving the affirmative defenses.

The State also maintains that even if error was committed as alleged, that the error has been waived because defendants failed to tender the proper instruction. However, we do not believe that the record shows such waiver. The record discloses that the parties had "gone over" the instructions during an unrecorded trial conference. The next day, the following colloquy, which was recorded, occurred:

"The Court: Let's go over each instruction. Let the record show I have been tendered the written instructions which we have gone over yesterday and what I have before me is [*sic*] and you have given written copies to defense attorneys?

[The State]: Yes, * * *.

[The Defense]: Without notations."

The court and counsel then reviewed each instruction and defense counsel indicated their objections or agreement to the instructions. The court then informed counsel whether the particular instruction would be given.

With respect to the issues instruction on attempt murder, defense counsel objected because "[a proper instruction] would require an additional instruction to make it complete where there has been the defense of another person. I am speaking of Henry Doig." The court informed counsel that the instruction "has been given." With respect to the issues instruction for attempt murder of Anderson, the court noted "that has been marked given over the same objection." The same objections relating to the instructions being incomplete were raised as to the issue instructions on aggravated battery and battery. The court responded that these instructions would be marked given over defendant's objection. Defense counsel then requested "an opportunity to prepare a proper in-

struction." The court did not respond to the request, but continued reviewing the instructions. In post-trial motions, defendants again brought the claimed error to the trial court's attention.

In our view, the record in the instant case does not show waiver of the objections. As the State correctly notes, the defendants here did not physically tender to the court the proper instruction. The defendants, however, did not "sit by idly and allow irregular proceedings to take place" as the State suggests. The defendants here did not acquiesce in the error thereby depriving the trial court of an "opportunity to correct" the error urged on appeal. *People v. Smalley* (1973), 10 Ill. App. 3d 416, 426, 294 N.E.2d 305, 312.

■■ Contrary to the State's characterization of the facts, defendants objected several times to the issues instructions being incomplete and asked leave of court to prepare proper instructions. Defendants did not wait until this appeal to first complain. While defendants may be criticized for not having the instructions ready to physically tender to the court, defendants did clearly point out the alleged error in the instructions to the trial court. Under such circumstances, we believe it would be fundamentally unfair to invoke the waiver rule to bar the defendants' claim.

Even if we were to invoke the waiver rule, we believe the plain error exception would apply. (Ill. Rev. Stat. 1975, ch. 110A, par. 615.) This is a "limited exception" to be used to correct grave errors or, "to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed." (*People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337. See also *People v. Whitney* (1980), 86 Ill. App. 3d 617, 408 N.E.2d 268.) The evidence presented here was factually close. Gentile was the only occurrence witness to testify at trial and she was not able to observe at all times the parties involved in the altercation. Defendant Doig asserted that Anderson and Boyle initiated the fight; Gentile testified that the parties approached each other. Officer McCallister testified that Brophy told him that Anderson and Boyle jumped him and Doig came to his assistance. The stipulated testimony of Dr. Archbald showed that Brophy's eye had been cut.

■■ As this court noted in *People v. Whitney*, fundamental fairness requires that the issues instruction on the justifiable use of force be given where self-defense is raised. As in *Whitney*, the case here must be reversed since the instruction was omitted and the outcome of this factually close case could well have been different had the required instructions been given. We find defendants' contention to be meritorious.

## II

Defendants next contend that the State failed to prove beyond a reasonable doubt that defendants did not use justifiable force to repel

their antagonists. We disagree. The testimony of Gentile and defendant Doig as to a different sequence of events created an issue of fact for the jury to resolve. The jury was not required to believe defendant Doig's testimony. (See *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

■■ The testimony of even one witness, if positive and credible, is sufficient to convict, even though it is contradicted by the accused (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 132), and the witness need not be the victim of the crime. (See *People v. Stallcup* (1973), 10 Ill. App. 3d 153, 294 N.E.2d 21.) It is for the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Akis.*) Based on the evidence presented, we believe the jury was entitled to conclude that the defendants were not justified in using the force that was used against Anderson and Boyle.

## III

Defendant Brophy contends the trial court improperly denied his motion for severance. We disagree.

The general rule is that persons jointly indicted should be jointly tried; separate trials are only required when the defenses are so antagonistic that a fair trial can be achieved only through severance. (*People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759; *People v. Dorsey* (1980), 88 Ill. App. 3d 712, 410 N.E.2d 1132.) The decision to grant a severance rests within the sound discretion of the trial court. *People v. Rogers* (1979), 79 Ill. App. 3d 745, 398 N.E.2d 1058.

In reviewing the trial court's decision, the appellate court will look only to the petitions filed by the defendants and the matters alleged therein. (*People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321.) The defendants must demonstrate, prior to trial, how they will be prejudiced by the joint trial; the reviewing court is not to consider subsequent happenings at trial. *People v. Yonder; People v. Rhodes* (1969), 41 Ill. 2d 494, 244 N.E.2d 145.

Defendant Brophy's motion for severance alleged that he would be prejudiced by a joint trial because only defendant Doig allegedly used a deadly weapon (battery cables) while committing a battery and this evidence would prejudice Brophy, who was not accountable for Doig's actions.

■■ We do not believe that the evidence which was to be presented was of such a nature as to render defendants' defenses antagonistic. Both defenses—self-defense and defense of others—mean that the force uti-

lized was justified. Thus, the defenses of both defendants remain harmonious, not antagonistic. We also note that Doig did not implicate or accuse Brophy of committing the aggravated battery or battery. (See *People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759.) We believe the trial court properly denied Brophy's motion for severance.[1]

■■ Defendant Doig also claims it was error to deny severance. He, however, did not file a motion for severance, or raise the issue in his post-trial motion. Accordingly, we conclude that he has waived this issue for purposes of this appeal. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759.

Finally, as noted, we find no need to address the remaining issues raised by defendants since they are unlikely to occur again during the course of the new trial.

For the reasons noted, the judgment of the circuit court of Cook County is reversed and the case is remanded for a new trial.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.

---

[1] Brophy's argument implies there was no evidence presented showing that he was accountable for Doig's actions and therefore the jury was improperly instructed as to his accountability for aggravated battery based on the use of a deadly weapon. We disagree. If a person aids another in the planning or commission of an offense, he is criminally accountable for the conduct of the person he aids. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2.) Accountability requires that the assistance of a person occur prior to or during the criminal act. This assistance may be inferred from activities occurring after the offense. (*People v. Clifford* (1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.) Brophy kicked Anderson and Boyle after Doig hit them with jumper cables. This conduct certainly assisted Doig's early actions. There was sufficient evidence presented for the trier of fact to determine the issue of accountability.