THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARC McDOWELL, Defendant-Appellant.

Fifth District   No. 5—83—0843

Opinion filed September 17, 1985.

Randy E. Blue and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Barbara Adams, State's Attorney, of Hillsboro (Stephen E. Norris, of State's Attorneys Appellate Service Commission, of Mt. Vernon, and Michael K. Fawell, of Wheaton, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Montgomery County, Marc McDowell, defendant, was found guilty of aggravated battery upon William H. Curtis, a correctional officer, and subsequently sentenced to two years' imprisonment. On appeal, defendant contends he was denied his right to a fair trial by the trial court's refusal to give a self-defense instruction tendered by defendant. We affirm.

The incident in question occurred at the Graham Correctional Center on September 27, 1982. William Curtis testified that he was working that day as a duty sergeant. That morning Officer Stockstill had gone to the defendant's cell to deliver a disciplinary report which defendant refused. Ten minutes later, Captain Wombacher and Curtis also went down to the defendant's cell. Wombacher asked for the report and the defendant refused to give it to him. Wombacher next asked the defendant to reach his hands through the food tray door and the defendant refused. Wombacher then entered the defendant's room and handcuffed him. The defendant was then taken to the dayroom with Wombacher and Curtis walking alongside him. Defendant was told to sit at a table in the dayroom. Wombacher later told the defendant he would have to go to another room. The defendant refused. After several requests for the defendant to go to the other room, Wombacher grabbed the defendant by the left arm and tried to pick him up. The defendant had his leg wrapped around the table leg, so when Wombacher pulled the defendant towards the doorway the table was dragged across the floor also. Curtis then ran up to get the defendant's leg off the table. Curtis was standing beside Wombacher with his right arm on the defendant's right leg. Curtis saw the

defendant rise up with his face at Curtis' elbow and then he felt pain. Wombacher, Curtis and Stockstill then picked up the defendant and carried him to an empty room. The defendant was kicking and swinging and hard to control, so they put him down to get hold of him better. Curtis identified three of the people's exhibits as photographs of a bite mark on his arm taken shortly after the incident occurred and identified the defendant as the person who had bitten him.

David Stockstill, who was working as a segregation dayroom officer. on September 27, 1982, testified to the events that morning consistently with Curtis with a few exceptions. Stockstill did not mention that Curtis was on the scene until they were in the dayroom with the defendant. Stockstill also testified that the defendant was willingly handcuffed and walked to the dayroom quietly. As they were carrying the defendant to the empty room, Stockstill stated that the defendant was dropped. Although Stockstill did not actually see it happen, he testified that it was about then that Curtis was bitten.

Douglas Wombacher was working as the assistant shift commander on September 27, 1982. Wombacher testified consistently with Curtis. He stated that he also saw the defendant rise up and bite Curtis. Wombacher tried to lower the defendant and to get him away from Curtis, but the defendant had already bitten him.

Charles Taylor, a correctional officer at Graham Correctional Center, testified that on September 27, 1982, he was working as the control officer in segregation. Taylor could not hear what transpired in the dayroom but he observed the defendant being dragged across the floor along with the table. When they got to the door, Curtis and Wombacher picked up the defendant to carry him through the door. Taylor turned to close the door, and, as he turned back to the dayroom, he saw that "they had fallen down in front of the door in the doorway." Taylor turned back around to reopen the door. He did not see whether Curtis was injured until after the incident.

Michael Bryant, testifying on behalf of the defendant, stated that on September 27, 1982, he was an inmate in segregation at Graham Correctional Center. He had known the defendant for about four months. Bryant, the defendant, and a few other residents were in the yard that morning for about an hour and a half. He refused to come back in because they were supposed to have two hours in the yard. They were brought in one at a time and the defendant was the last person brought in from the yard. The defendant was the only person handcuffed. Bryant was placed in his cell, which was located right by the dayroom. Bryant testified that his cell was located on the south side of the hallway in the east wing of segregation. Bryant observed

the defendant being dragged in by three officers. They put the defendant in a cell, and Bryant heard the defendant ask for the handcuffs to be removed. Bryant observed through the porthole in his door that the officers went back and took the defendant into the dayroom. In the dayroom Curtis started choking the defendant, and the defendant kept telling him to let go. Curtis would not let go, so the defendant bit him. Bryant did not actually see the defendant bite Curtis, but saw Curtis jerk away, and Bryant knew something had happened. After that, they dragged the defendant out of sight.

The defendant testified that on September 27, 1982, he was in the segregation yard with other inmates. They were in the yard for about an hour and a half and they refused to come inside. When they were brought in, the defendant was the only one who was handcuffed. Wombacher, Curtis and a couple of other people dragged the defendant to his cell. About 20 minutes later, the defendant was brought a disciplinary ticket by Officer Stockstill for disobeying a direct order—not coming in from the yard when told. The defendant was asked to sign the ticket, but refused to do so. He asked to talk to the Major about the incident because he was not the only person involved. Stockstill said the Major was busy and then got Captain Wombacher. Wombacher asked the defendant to be handcuffed so that his cell could be shaken down. The defendant stuck his hands through the porthole to be handcuffed and was taken to the dayroom. In the dayroom the defendant was directed to sit at a table. As he sat there he talked with other inmates who were still in the yard. The defendant was told to stop talking but he did not. Then Wombacher asked the defendant to move to another cell, which the defendant refused to do. Wombacher asked him several times, then came around and grabbed the defendant from behind and dragged him. The defendant had been sitting with his legs up, and the table was dragged with him. The defendant released his legs from the table, and he was carried off. The officers were roughly grabbing and pulling at the defendant. At the doorway while everyone was grabbing at him, the defendant was let down and subsequently bit someone. He later learned it was Curtis. The defendant was then carried to an empty cell and then transferred to his own cell after 10 minutes.

In rebuttal Captain Wombacher testified that the defendant and Bryant had cells on opposite sides of the hallway in the north wing of segregation. He testified further that Bryant's cell was on the west side of the hallway in the north wing of segregation and was about 10 to 11 feet down the hall. He stated that a person in that cell could only see a small portion of the dayroom, which did not include the ta-

ble at which the defendant was sitting. Wombacher further testified that Bryant could not have possibly seen Sergeant Curtis choking the defendant, in the part of the dayroom he claims to have, from his cell.

Greg Durham, a correctional officer at Menard, testified that he transported the defendant from Menard to Hillsboro for the trial. During the ride they talked about how much money inmates make and about a search at Menard which produced about $1,200 found in a cell. Durham asked the defendant if he had any witnesses coming to testify. The defendant said he had one coming from Pontiac which was costing him $1,000.

The defendant testified in surrebuttal that he and Durham got to Hillsboro early and were talking in the parking lot. They talked about the shake-down at Menard and about the $1,200 that was discovered. Durham asked the defendant if he had any witnesses coming and how much it would cost him. The defendant said he had one coming from Pontiac and it was costing him "thousands." They proceeded to talk about how many months it would take the State to take the defendant's pay off the books to get $1,000. The defendant told Durham that there was no way he could pay that kind of money. The defendant testified that he was kidding when he made these remarks.

The sole issue raised by defendant on appeal is the trial court's refusal to give one of the self-defense instructions tendered by defendant. During the instruction conference the defendant requested Illinois Pattern Jury Instruction (IPI), Criminal, No. 24—25.06 (2d ed. 1981) (defendant's instruction No. 4), which defines when force is justified in defense of a person. The defendant also requested IPI Criminal 2d No. 11.10 with IPI Criminal 2d No. 24—25.06A (defendant's instruction No. 5), which gives the elements of aggravated battery plus the additional element that the defendant was not justified in the force he used. The court admitted defendant's No. 4 without objection, but refused defendant's No. 5 and gave People's instruction No. 9 (IPI Criminal 2d No. 11.10), over the defendant's objection, without the justification element. The court found that the issue of justification was already raised in the first paragraph of People's instruction No. 9, which was modified by the addition of the phrase "without legal justification." On appeal, citing *People v. Brophy* (1981), 96 Ill. App. 3d 936, 422 N.E.2d 158, the defendant contends that the trial court erred in failing to modify the issues instruction to include the element that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in his use of force.

When the defense of justifiable use of force is raised, the State has the burden of proving beyond a reasonable doubt that the

defendant was not justified in using the force which he used, together with all elements of the offense. *(People v. Brophy* (1981), 96 Ill. App. 3d 936, 942, 422 N.E.2d 158, 164; Ill. Rev. Stat. 1983, ch. 38, par. 3—2.) The use of force in the defense of a person is legally justified when each of the following elements is present:

"(1) [T]hat force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. [Citation.]" *(People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1021, 415 N.E.2d 499, 501.)

A defense based upon satisfaction of each of the above elements is an affirmative defense, which is raised only if defendant presents "some evidence" regarding each element. (91 Ill. App. 3d 1019, 1022, 415 N.E.2d 499, 501.) This court has often stated that to justify the giving of an instruction all that need be shown is a slight amount of evidence in support of the underlying theory of defense. *(People v. Robinson* (1981), 92 Ill. App. 3d 972, 975, 416 N.E.2d 793, 797.) If such evidence is present, the jury must then be instructed on the burden of proof. The IPI Criminal Committee suggests that an affirmative defense should be treated as follows:

"The Committee believes that elements or issues of an affirmative defense should be treated in two ways: *first,* by definition following the definition of the crime with which the defendant is charged; *second,* in the same instruction with the issues are elements of the crime and the State's burden of proof *** The appropriate issues and burden of proof defenses instruction should be superimposed upon the appropriate issues and burden of proof crimes instruction so that the jury receives a single instruction covering all of the issues in the case." (IPI Criminal 2d, Committee Comments 548.)

In *People v. Brophy* (1981), 96 Ill. App. 3d 936, 422 N.E.2d 158, cited by defendant in his brief, the defense of justifiable use of force was raised by evidence at trial. The court gave the jury IPI Criminal 2d No. 24.06 (1968) (definition of justifiable use of force in defense of person), and an issues instruction which included the elements of aggravated battery. The issues instruction was not modified in any way to instruct the jury that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in using the

force which he used. The court in *Brophy* held that the trial court erred because it did not properly instruct the jury that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in using the force which he used. The court stated:

> "The instructions given in this case defining self-defense and defense of others do not state, as is required [citation], that it is the State's burden to prove, beyond a reasonable doubt, that defendants acted without lawful justification. Thus, the trial court should have allowed defendants the opportunity to modify the instructions to include the state's burden of disproving the affirmative defenses." (96 Ill. App. 3d 936, 943, 422 N.E.2d 158, 164.)

The court held that reversible error had been committed, reversed the trial court and remanded the case for a new trial.

■ In the case at bar we find that the defense of justifiable use of force was raised by the testimony of Michael Bryant. Bryant, a prisoner in the segregation unit with the defendant on the date of the incident, testified that he observed Sergeant Curtis choking the defendant in the dayroom. We also find, however, that the jury was apprised by the instructions that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in using the force which he used. We note that the court modified the issues instruction, given in *Brophy*, by adding the phrase "without legal justification" so that it read:

> "To sustain the charge of aggravated battery, the State must prove the following propositions:
>
> First: That the defendant knowingly or intentionally, *without legal justification* caused bodily harm to William H. Curtis.
>
> Second: That the defendant knew the individual harmed to be a correctional officer engaged in the execution of his official duties.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.)

The phrase "without legal justification" was focused on in another instruction defining justifiable use of force, which read:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary

to defend [himself] against the imminent use of unlawful force." (IPI Criminal 2d No. 24—25.06.)

■ Therefore, unlike *Brophy*, the instructions, construed as a whole, fully and properly informed the jury in the instant case that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified in using the force which he used. (See *People v. Kelly* (1956), 8 Ill. 2d 604, 616-17, 136 N.E.2d 785, 792; *People v. Allen* (1976), 35 Ill. App. 3d 342, 347, 341 N.E.2d 431, 435.) Although we find that the preferable method would have been to give IPI Criminal 2d No. 11.10 and IPI Criminal 2d No. 24—25.06A combined (defendant's instruction No. 5), we find that the modification of the issues instruction through the addition of the phrase "without legal justification" was sufficient to adequately instruct the jury, and that any error by the trial court in refusing to give defendant's instruction No. 5 was harmless.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

KARNS and KASSERMAN, JJ., concur.